UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANDRES CAMPUZANO, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-04-3810 |
| § | |
| JO ANNE B. BARNHART, § | |
|    Commissioner, Social § | |
|    Security Administration, § | |
| § | |
| *Defendant*. § | |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Andres Campuzano filed this case under the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner denying his request for disability insurance benefits.[1] Campuzano has filed a motion for summary judgment (Dkt. 20). Having considered the parties' submissions, the administrative record, and applicable law, Campuzano's motion is denied and the Commissioner's decision is affirmed.

**I.   Background**

Campuzano filed for disability benefits under Title XVI of the Social Security Act on September 3, 2002 alleging he was disabled and unable to work as of October 2000 due to back and leg disorders, severe pain, and blindness in his left eye.[2] After his application and request for reconsideration were denied, Campuzano requested a hearing before an

---

[1]   The parties have consented to the jurisdiction of this Magistrate Judge.

[2]   Campuzano was awarded disability benefits from August 1995 until July 1999.

administrative law judge (ALJ). The ALJ conducted a hearing on December 18, 2003 at which Campuzano and a vocational expert testified. A Spanish translator translated the proceedings for Campuzano. The ALJ determined that Campuzano was not disabled because he was able to perform jobs that exist in significant numbers in the national economy. The Appeals Council denied Campuzano's request for review, making the ALJ's determination the final decision of the Commissioner of Social Security. Campuzano now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Analysis**

    **A.    Standard of Review**

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

**B.     The Commissioner's Decision and the Evidence of Record**

The ALJ determined that Campuzano was not working at the time of the hearing; he has a severe impairment that does not equal an impairment listed in Appendix A; and he is unable to perform his past employment. At step five of the sequential analysis, the ALJ found that Campuzano has the residual functional capacity to perform light work and that jobs exist in the regional economy that Campuzano can do.

Campuzano argues that the ALJ erroneously disregarded the opinions of his treating physician in favor of the opinion of the agency's examining physician. Campuzano also argues that the hypothetical question the ALJ posed to the vocational expert regarding available jobs did not take into account all of Campuzano's exertional and non-exertional limitations.

Campuzano was 44 years old at the time of the hearing. He went to school through the sixth grade in Mexico. He cannot read, write or speak English. He is blind in his left eye. Until 1992 he was primarily employed in the kitchen of Mexican restaurants.

Campuzano began seeing Dr. Eric Scheffey in 1995 for back and leg pain. An MRI of his cervical spine in December 1995 showed herniated discs at C3-C4 and C4-C5 and a bulging disc at C5-C6; an ankle MRI showed osteochondritis dissecans and a sprain; and an MRI of his lumbar spine revealed a herniated lumbar disc at L4 and L5-S1 with lateral recess stenosis bilaterally. Dr. Scheffey saw Campuzano numerous times between 1995 and 2002, routinely noting the presence of a herniated lumbar disc and other disorders and prescribing

pain medication. Dr. Scheffey wrote in a 1996 report and a 1997 note that Campuzano was unable to work due to his back injury.

The most recent report from Dr. Scheffey is dated November 6, 2002. The November 6, 2002 report notes that the patient is having severe pain and is not improving. The report indicates Campuzano is suffering from a herniated lumbar disc, lumbar radiculopathy, lateral recess stenosis, spinal stenosis, and conservative treatment has failed to date. The November report also notes that Campuzano is a candidate for laminectomy and fusion with instrumentation, desires surgery for pain relief and is cleared for the procedure, but is waiting for a court date to get insurance coverage.[3]

Dr. Gibson examined Campuzano on October 28, 2002. Dr. Gibson's report notes that Campuzano's English is poor. The report states that Campuzano "does not really take any pain medication" and that he was able to sit, stand, and walk in the office setting without difficulty. The report also states that he "has not required back surgery." Based on his examination, Dr. Gibson concluded that Campuzano should receive conservative therapy and should be able to perform light and sedentary work without difficulty.[4]

The record also contains a December 30, 2002 report of a medical consultant. The consultant concluded, based on a review of the medical records, that Campuzano could occasionally lift 20 lbs., frequently lift 10 lbs., stand or walk about 6 hours in an 8 hour work

---

[3] November 6, 2002 report of Dr. Eric Scheffey, Record, at 158-59.

[4] Gibson report, October 28, 2002, Record, at 153-55.

5

day, sit with normal breaks about 6 hours in an 8 hour workday, and was unlimited in ability to push and/or pull. The medical consultant further concluded that "the alleged limitations caused by the claimants symptoms are partially supported by the medical and other evidence."[5]

The opinion and diagnosis of a treating physician should be afforded great weight in determining disability unless there is good cause to decrease reliance. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted).

*Newton* establishes the following rule:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

209 F.3d at 453 (emphasis in original). *Newton* does not apply here because there is evidence in the record from an examining physician, Dr. Gibson.

The ALJ did not completely reject the medical diagnosis of Dr. Scheffey. The ALJ accepted the results of the MRI studies of Campuzano's lumbar and cervical spine performed

---

[5] Medical Consultant report on physical residual function capacity, Record, at 177-84.

in December 1995. The ALJ accepted many of the observations included in Scheffey's medical reports from 1999 through November, 2002, including that Campuzano continued to report significant pain and had marked tenderness across the back and down both legs. However, the ALJ did not accept that Campuzano's diagnosed impairments supported the degree of limitations he alleged.

The ALJ found Campuzano's subjective statements of pain not entirely credible. Not all pain is disabling; it is within the ALJ's discretion to determine the disabling nature of pain. *Barajas*, 738 F.2d at 644. While the record indicates that Dr. Scheffey prescribed pain medication, there was also evidence to support the ALJ's finding that Campuzano's pain was not as debilitating as alleged. Campuzano told Dr. Gibson that he did not take pain medications, and Dr. Gibson observed that Campuzano did not appear to be in pain during his office visit. Although Dr. Scheffey's November 6 report states that straight let raising was positive at 30°, just about a week earlier Dr. Gibson had found straight leg raise was negative. There is no evidence that Campuzano sought treatment from Dr. Scheffey or any other medical provider between November 2002 and December 2003, creating a reasonable inference that Campuzano's pain was not unmanageable during that time. The ALJ's finding that the credible medical evidence of record does not fully support the degree of pain and limitation alleged by Campuzano is not error.

The ALJ was not required to give controlling weight to Dr. Scheffey's opinion that Campuzano was unable to work.[6] The Fifth Circuit has repeatedly held that an opinion that a claimant is unable to work is not the type of treating physician's opinion that is entitled to controlling weight. *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act; that conclusion may be determined only by the [Commissioner]."); *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989) (citing *Barajas*); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no 'special significance' are determinations that an applicant is 'disabled' or 'unable to work.'").

The ALJ also did not err in relying on the vocational expert's opinion that there were jobs available that someone with Campuzano's limitations could perform. The ALJ asked the vocational expert the following hypothetical questions:

> Now, assume for the purpose of a hypothetical question an individual who is 43 years old, who is illiterate. Assume this individual has the following exertional limitations. Assume this individual can sit for a maximum of one hour at a time. Assume this individual can sit for a total of six hours out of eight in the work day. Assume this individual can stand for a maximum of 30

---

[6] Dr. Scheffey's 1996 report was made in the context of a letter to Campuzano's counsel in support of his workers compensation claim. *See* April 19, 1996 letter from Scheffey to Christoper Hull (stating "this patient is not a candidate for gainful employment and is due whatever benefits are available to him under the Workman's Compensation law . . ."), Record, at 188-89. Dr. Scheffey's 1997 note is conclusory and is unsupported by medical evidence. Record, at 196. Moreover, Dr. Scheffey's 1996 and 1997 opinions were based on Campuzano's condition years before the October 2000 date of onset of Campuzano's alleged disability in this case.

minutes at a time. Assume this individual can stand for a total of four hours out of eight in the work day. Assume this individual can walk for a maximum of 30 minutes at a time. Assume this individual can walk for a total of two hours out of eight in the work day. Assume this individual can lift 20 pounds on an occasional basis, ten pounds on a frequent basis, carry 20 pounds on an occasional basis, ten pounds on a frequent basis. Assume this individual requires a sit/stand option in order to perform job duties. Assume this individual has the following non-exertion limitations. Assume this individual cannot work around unprotected heights, or around moving or dangerous machinery. Assume this individual cannot perform work requiring good visual acuity, and assume this individual cannot be given written instructions. In your opinion, could an individual with those limitations perform any of the past relevant work you've described for the Claimant?

A.   No, Your Honor, due to the restrictions of his walking and standing limitations.

Okay. Now, assume for the purpose of a second hypothetical question an individual with the same age, same educational level. Assume this individual has the past relevant work experience that you've described for the Claimant. Assume the exertional and non-exertional limitations that I put forth in my first hypothetical question. In your opinion, would there be other work, which exists in the regional or national economy, that an individual with such limitations could perform?

A.   Yes, Your Honor. There'd be light, unskilled work, but . . . it wouldn't be a full range of light, unskilled, due to some of the restrictions.[7]

The hypothetical questions posed by the ALJ reasonably incorporated all disabilities of Campuzano that the ALJ found were supported by the evidence. *Boyd v. Apfel*, 239 F.3d 698, 707-08 (5th Cir. 2001). The ALJ did not incorporate Campuzano's inability to speak English into the hypothetical questions, but Campuzano's counsel had an opportunity to correct that deficiency. Campuzano's counsel asked the vocational expert if she considered

---

[7]   Transcript of December 18, 2003 hearing, Record, at 228-29.

whether the fact that Campuzano does not speak English would affect his ability to perform the jobs she identified. The vocational expert testified that she did not think it would.[8] Thus, the hypothetical question was not defective. *Id.*

Campuzano further challenges the vocational expert's identification of three particular jobs available in the national economy that an individual with Campuzano's limitations could perform, citing an apparent conflict with the listed job requirements in the *Dictionary of Occupational Titles* ("DOT"). *See Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so"). Upon closer examination, the DOT conflicts cited by Campuzano are more apparent than real. For example, Campuzano contends that his limited vision would prevent him from working as a parking lot attendant, who "[r]ecords time and drives automobile to parking space," according to the DOT. But Campuzano has omitted the balance of the quoted DOT passage, which reads: "or points out parking space for customer's use." U.S. Dept of Labor, *Dictionary of Occupational Titles*, 915.473-010 (4th ed. 1991). Thus an unrestricted ability to drive automobiles is not necessarily a requirement for all or even most parking lot attendant positions. *See Carey,* 230 F.3d at 146 ("the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation"). Campuzano's limited vision

---

[8]  *Id.* at 231.

would not preclude him from pointing out available parking spaces and performing the other related tasks (e.g. placing tags on windshields, collecting parking fees, patrolling the lot, etc.) listed in the DOT.

Similarly, Campuzano asserts that it would be unreasonable to expect him to work as an "electronics worker" because the DOT says he would "receive verbal or written instructions from supervisor regarding work assignment." The implication is that such instructions would be too detailed or complex for Campuzano to follow given his inability to speak English. However, the DOT's general description for this position does not suggest that level of complexity: "Performs any combination of following tasks to clean, trim, or prepare components or parts for assembly by other workers: . . ."[9] The listed tasks (e.g. cleaning and deglossing parts, trimming flash from molded parts, filling shells with plastic encapsulating fluid) appear straight-forward, uncomplicated, and repetitive enough that a vocational expert could properly conclude that a person with Campuzano's language limitations would be able to comprehend what was expected.

As for the projected "ticket taker" position, Campuzano takes aim at the vocational expert's specific suggestion that he could work as a ferryboat ticket taker, contending that the DOT lists such a job as requiring a medium exertion level. *DOT* 911.677-010. But the

---

[9] *DOT* 726.687-010.

11

more general category of ticket taker, described at *DOT* 344.667-010, is classified as light work and lists job duties that seem clearly within Campuzano's capacity.[10]

In sum, the listed DOT requirements are not so clearly beyond Campuzano's limited capacity as to generate an implied conflict with the vocational expert's testimony. "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). An ALJ may rely on the testimony of a vocational expert where the claimant is not able to perform the full range of light, unskilled work. *Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000). Campuzano disagrees with the vocational expert's assessment that he can perform the duties of a parking lot attendant, electronics worker, or ticket taker given his inability to speak English and his lack of vision in one eye. But this is essentially a factual dispute which the ALJ was entitled to resolve by relying on the vocational expert's opinion. The task of this court is not to decide whether the vocational expert was correct in her opinion, but rather to assess whether that opinion was sufficiently probative and reliable as to constitute substantial evidence supporting the ALJ's decision. The vocational expert's testimony meets that standard, and accordingly the ALJ did not err in concluding, based on that testimony, that Campuzano could perform other available work.

---

[10] "Collects admission tickets and passes from patrons at entertainment events: Examines ticket and pass to verify authenticity, using criteria such as color and date issued. . . ." *DOT* 344.667-010.

**III.     Conclusion**

The Commissioner's decision is supported by substantial evidence in the record and is based on proper legal standards. Therefore, the plaintiff's motion for summary judgment is denied, and the Commissioner's decision is affirmed.

Signed at Houston, Texas, on March 21, 2006.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge